UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
(Green Bay Division)

STEVEN A. AVERY,

   Plaintiff,

v.              COMPLAINT

MANITOWOC COUNTY,
THOMAS H. KOCOUREK, individually
and in his official capacity as       Civil Action No.
Sheriff of Manitowoc County,
  and
DENIS R. VOGEL, individually
with respect only to his executive, administrative   Jury Trial Demanded
and advice and counsel functions
and in his official capacity as
District Attorney of Manitowoc County,

   Defendants.

---

Plaintiff Steven A. Avery, by his attorneys, Glynn, Fitzgerald and Albee, S.C. by Stephen M. Glynn, and Walter F. Kelly, S.C. by Walter F. Kelly states his complaint as follows:

### Nature of the Case

1. This is an action pursuant to 42 U.S.C. §§ 1983 and 1985(2) and the due process and equal protection clauses of the Fourteenth Amendment to the United States Constitution seeking to redress the wrongful conviction and imprisonment of Steven A. Avery for felony crimes of sexual assault, attempted murder, and false imprisonment that he did not commit.

### Jurisdiction

2. Jurisdiction is premised upon 28 U.S.C. §§ 1331 and 1343. The amount in controversy exceeds $1,000,000.00 and may total as much as $36,000,000.00.

## Parties

3. Steven A. Avery is a citizen of Wisconsin and of the United States who resides at 12930 Avery Rd. in Two Rivers, WI 54241.

4. Manitowoc County is a body corporate and political organized under and pursuant to the laws of Wisconsin, and its address is County Clerk, Manitowoc County Courthouse, 1010 South 8th Street, Manitowoc, WI 54220. At all times relevant to the allegations of this complaint Manitowoc County acted under color of law within the meaning of 42 U.S.C. § 1983 and pursuant to its official policies, customs and usages and the final authority of its Sheriff and District Attorney.

5. Thomas H. Kocourek is a citizen of Wisconsin and of the United States who resides at 1601 Shoto Road, Two Rivers, WI 54241. At all times relevant to the allegations of this complaint Kocourek was acting, albeit unlawfully, under color of law within the meaning of 42 U.S.C. § 1983 and within the scope of his employment within the meaning of § 895.46, Wis. Stats. Kocourek is sued both individually and in his official capacity as Sheriff of Manitowoc County as to which County he was the final authoritative decisionmaker and policymaker with respect to the office of Sheriff in all respects relevant to the allegations of this complaint until January, 2001.

6. Denis R. Vogel is a citizen of Wisconsin and of the United States who resides at 4 Bayside Drive, Madison, WI 53704. At all times relevant to the allegations of this complaint Vogel was acting, albeit unlawfully, under color of law within the meaning of 42 U.S.C. § 1983 and within the scope of his employment within the meaning of § 895.46, Wis. Stats. Vogel is sued both individually and in his official capacity as District Attorney of Manitowoc County as to which County he was the final authoritative

decisionmaker and policymaker with respect to the office of District Attorney in all respects relevant to the allegations of this complaint until an unknown date in 1986. In his official capacity Vogel is sued with respect to the entirety of his functions as the District Attorney of Manitowoc County in all respects relevant to the allegations of this complaint; in his individual capacity Vogel is sued with respect only to his executive, administrative, and advice and counsel functions as the District Attorney of Manitowoc County in all respects relevant to the allegations of this complaint.

7. On July 29, 1985 at approximately 4:00 P.M. one P. B. was sexually assaulted, beaten and threatened with her life, and forcibly held against her will on a Lake Michigan beach in Manitowoc County by Gregory A. Allen.

8. Allen, who had at the time a long and violent record which included sex offenses, had engaged in sexually lewd and lascivious conduct and threatened violence against a woman on the same beach two years previously to his attack on P. B. The prosecutor in that case was Vogel.

9. During July, 1985 Allen was under active daily surveillance by members of the City of Manitowoc Police Department for suspected sexually assaultive behavior occurring during the first half of 1985 up to and including July 29, 1985 that was characterized in official police records by the City Department as becoming increasingly "very bold."

10. A Manitowoc City Department report dated July 14, 1985 stated:

> This department has compiled several complaints recently concerning Prowling, Window Peeping, Indecent Exposure, and Sexual Assault, ranging from January 1985 through 7/14/85. In each case, GREGORY A. ALLEN...has been listed as a suspect. Past record and intelligence concerning

3

> Gregory Allen reveals he is a dangerous individual with a
> potential for violence.

11. On July 29, 1985 the surveillance of Allen by the Manitowoc city police was discontinued for most of the day because the Department's personnel were assigned to cover other calls.

12. Allen fit the description of P. B.'s assailant, and Allen's photograph was readily accessible to the Manitowoc County Sheriff and District Attorney.

13. Based upon the facts set forth in ¶¶ 7-12 above, Allen should have been the defendants' prime suspect in the sexual assault of P. B.

14. At the same time that P. B. was attacked Steven A. Avery was on a shopping trip with his wife and children in Green Bay to buy paint for work on his family home. He could account for his whereabouts throughout the day on July 29, 1985, and there was corroborating evidence from witnesses and documents to support his account.

15. On July 29, 1985 Steven A. Avery was known to both the Sheriff and the District Attorney of Manitowoc County generally in regard to certain prior offenses and specifically in regard to an endangerment of safety incident involving the wife of a Manitowoc County Deputy Sheriff that occurred in January, 1985. That woman was a friend of Manitowoc County Deputy Sheriff Judy Dvorak.

16. There was an attitude of hostility within the Manitowoc County Sheriff's Department toward Steven A. Avery and "the Averys" on July 29, 1985 that included both Dvorak and Sheriff Kocourek, and a similar attitude was shared by District Attorney Vogel.

17. As a result of this hostility neither Dvorak, nor Kocourek, nor Vogel possessed that objectivity that is required in law enforcement investigation of crimes such

as those committed against P. B. by Allen. Instead, each was predisposed against Steven A. Avery.

18. P. B. was severely traumatized by Allen's attack and was transported to Memorial Hospital in Manitowoc where she was questioned and interviewed during the sexual assault treatment protocol by Dvorek and Kocourek. Although P. B.'s description of her attacker substantially resembled Allen, Dvorak and Kocourek identified Steven A. Avery as the probable offender, which immediately focused the Manitowoc County crime investigation upon Steven A. Avery and tended to pretermit meaningful investigation of other suspects, including particularly Allen.

19. Kocourek ordered procedures of victim identification, including a composite sketch and a photo selection process, that failed to follow professional standards, presented Steven A. Avery as a suspect, and excluded Allen from the selection process. P. B. was led to believe that the group of photos presented for her viewing included the main suspect whom the Sheriff's investigation considered to be her attacker. Steven A. Avery's photo was included; Allen's photo was not included.

20. According to well-known professional victim eyewitness identification principles, once a victim identifies a particular person as the criminal perpetrator, that identification becomes more likely to be repeated on later occasions. P. B. identified Steven A. Avery as her assailant when she examined the photos presented to her by Kocourek. A subsequent live lineup was arranged just three days later by Kocourek, who had since consulted Vogel, and again Allen was excluded from the array. Steven A. Avery was included, and P. B. was advised that an arrest had been made by the Sheriff's department and that the arrestee would be in the lineup. Steven A. Avery was the only

person in the live lineup whose picture had also been shown to P. B. in the group of photos provided to her by the Sheriff.

21. Although Kocourek had discussed the investigation and conferred with Vogel less than eight hours after the arrest of Steven A. Avery at approximately midnight on July 29, 1985, and although Vogel had prosecuted Allen two years previously for an assaultive sex crime on the same beach, neither Kocourek nor Vogel initiated or pursued investigatory efforts that considered Allen as a suspect, and Kocourek and Vogel cooperated in the planning and execution of the live lineup.

22. Kocourek and Vogel knew in July, 1985 about Allen's 1983 conviction for lewd and lascivious and assaultive behavior on the same beach. A report of that incident was contained in the Sheriff's file of the investigation of the attack upon P. B. and was signed by Vogel. Moreover, the Sheriff's Department knew as of December 15, 1983 both that Allen would expose himself and masturbate in front of women and children and that he had a history of sexually violent behavior, including the fact that he was a chief suspect in the murder of a fifteen-year-old girl in North Carolina in June, 1975.

23. Shortly after the arrest of Steven A. Avery, then City of Manitowoc Police Department detective Thomas Bergner approached Kocourek and attempted to discuss Allen, Allen's history, and his department's current concerns about Allen as a prime suspect in the attack upon P. B. It was Bergner's impression that Kocourek knew about Allen and Allen's history. Kocourek told Bergner that Allen had been ruled out as a suspect. That statement is irreconcilably inconsistent with Kocourek's repeated denials (following the events stated in ¶ 44 hereof) that he had no knowledge of Allen in August 1985 and thereafter until September 10, 2003.

6

24. Pursuant to his official policy, custom and usage in 1985 Kocourek made no memorandum or other writing for the P. B. investigatory file that recorded the contents of the information provided to him by Bergner.

25. Further pursuant to his official policy, custom and usage in 1985 Kocourek made no request interjurisdictionally of the City of Manitowoc Police Department, whether before or after his conversation with Bergner, for information concerning Allen.

26. Bergner believed that Allen should have been investigated as a prime suspect in the assault upon P. B. because he was a suspect in other sexual assaults at the same time, including an attempted sexual assault on July 14, 1985 in Manitowoc. Troubled by Kocourek's disinterest in pursuing Allen as a suspect, particularly in view of the then current alarm by City of Manitowoc officers that Allen was accelerating his sexually assaultive proclivities, Bergner contacted P. B.

27. P. B. herself was concerned at the time, a concern she communicated to the Sheriff, that she was receiving harassing phone calls of a sexual nature shortly after she entered her home, causing her to feel that she was being watched. P. B. contacted Kocourek and told him of Bergner's information. She was alarmed that her assailant might still be at large and stalking her, behavior that was consistent with Allen's history.

28. Kocourek did not tell P. B. of Allen's existence, history, or surveillance; he did not tell her of Bergner's alarm or the City department's pointed concerns about Allen; he did not tell her of "ruling out" Allen as a suspect; instead, he told her to disregard the matter and that he would take care of it, as the case was within Manitowoc County's jurisdiction, not the City's.

7

29. Pursuant to the same official policy, custom and usage in 1985 as alleged in ¶ 24 hereof Kocourek made no memorandum or other writing for the P. B. investigatory file that recorded the contents of the information provided to him by P. B. following her contact with Bergner.

30. The Captain of Detectives and other members of the Sheriff's Department in 1985 expressed their beliefs to the Sheriff that the investigation focused too quickly and specifically upon Steven A. Avery and to the exclusion of other suspects, including a man known for committing sex crimes like the one upon P. B., who matched P. B.'s description, and who was seen in the area where P. B.'s sexual assault took place at the time that it occurred. Kocourek would allow his investigatory personnel no further investigatory pursuit of suspects other than Avery and no pursuit of Allen.

31. Pursuant to the same official policy, custom and usage in 1985 as alleged in ¶ 24 hereof Kocourek made no memorandum or other writing for the P. B. investigatory file that recorded the contents of the information and objections provided to him by the Captain of Detectives and others within the Sheriff's Department in 1985.

32. Upon information and belief, Kocourek told Vogel about Bergner's information concerning Allen, P. B.'s ensuing phone call and further information, and the information and objections of his investigatory personnel.

33. Upon information and belief, pursuant to his official policy, custom and usage in 1985 Vogel made no memorandum or other writing for the P. B. prosecutorial or investigatory file in the District Attorney's office concerning the information provided to him by Kocourek about Bergner, P. B.'s concerns, and the information and objections of Kocourek's investigatory personnel.

34. Further pursuant to his official policy, custom and usage in 1985 Vogel made no request of the City of Manitowoc Police Department for information concerning Allen.

35. At the time of the investigation and prosecution of the attack upon P. B. Vogel knew that members of his office staff believed on objective, reasoned grounds that Steven A. Avery was not the person who attacked P. B. and that Allen was the person who attacked P. B. Upon information and belief, Vogel discussed the views of some members of his staff with Kocourek.

36. Pursuant to his official policy, custom and usage in 1985 Vogel made no memorandum or other writing for the P. B. prosecutorial or investigatory file in the District Attorney's office of either the views of his staff members as set forth in ¶ 35 hereof or of his discussions of these views with Kocourek.

37. Had Kocourek and/or Vogel reviewed police reports from the Manitowoc Police Department on or after July 29, 1985, the following information would have been specified, adding to the likelihood of Allen as the prime suspect in the assault upon P. B.

   A. Allen had been convicted of an aggravated offense as a juvenile.

   B. According to a police report from the Two Rivers Police Department, on August 2, 1983, Allen came up over some sand dunes on the same beach on which P. B. was assaulted, only some distance south of that point, and began walking behind a woman. He then pulled his shorts half-way down and began masturbating. He then lunged at her, but the woman was able to escape.

   C. Following that incident, Allen contacted the victim twice at her home and asked her to drop charges. The victim had moved to Green bay for school and did not know how Allen knew this or how he knew her phone number. Allen also contacted the victim's mother five days after the

9

offense and asked to talk to "Sue," which was the victim's name.

D. Allen had been convicted on February 2, 1984, for disorderly conduct in the City of Two Rivers.

E. On June 13, 1984, Allen was the suspect in a "prowler" case in which he attempted to gain entry into a woman's residence in Manitowoc after following her 16-year-old daughter and her daughter's friend to that residence.

F. Allen was suspected of prowling on January 24, 1985, and February 2, 1985, in Manitowoc, involving walking into people's yards and up to their garages and homes.

G. On January 26, 1985, Allen was the suspect in an investigation in which a woman told Manitowoc police that at 6:30 a.m. she saw a male subject wearing a ski mask between her yard and neighbor's yards; and that the suspect had taken a brick and moved it on the other side of a yard fence in order to stand on it and see into the neighbor's windows; and that the neighbor had a high school-age daughter.

H. On June 26, 1985, just one month prior to P. B.'s assault, Allen was suspected of going to a woman's front door at 2:30 a.m. and exposing himself, wearing a red t-shirt wrapped around his head. The victim could see the man's eyes, nose and mouth. She found out later that her kitchen window had been removed. Also, a bedroom window on the north side of the house had twelve Phillips screws removed from it.

Allen was stopped on his motorcycle a short distance away, wearing a red t-shirt. Allen matched the description except that he had a mustache. He was arrested for a traffic violation and for being a suspect in a vehicle entry the same day in which the vehicle owner had two daughters. Allen had two Phillips screwdrivers in his possession. Despite this evidence, Allen was not charged for this incident.

I. On July 14, 1985, just two weeks prior to P. B.'s assault, Allen was suspected of breaking into a man's home at 3:28 a.m. and attempting to assault his daughter. The daughter awoke to find a man straddling her, sitting on her thighs and fondling her breasts. The man then placed a knife to

the girl's throat saying she should take off her clothes or he would kill her. He was nude and had a bathing suit wrapped around his head covering his entire face and hair. The victim stated she had her period and not to hurt her. He brought her hand onto his penis and made her masturbate him until he ejaculated on her nightgown. He asked where her sister was and she said her sister was not at home. He then ordered her to accompany him to the back door, where he had her let him out. As he was leaving he told her not to tell anyone or he would kill her.

A neighbor stated that he saw a man park his motorcycle near the victim's house at approximately 2:30 a.m. and then walk toward the victim's house. Allen had a motorcycle. Another neighbor stated that at approximately 2:42 a.m., she observed a man carrying a picnic bench between her house and the victim's house. The suspect had gained access to the house through the window. Another neighbor had seen a man duck into the bushes of the victim's house one month prior to the July 14 incident at approximately 8:30 p.m. He then saw a motorcycle parked in front of an elderly couple's house nearby.

38. All the information concerning Allen alleged in ¶¶ 8-13, 18, 22-23, 26-28, 30, 32, 35, and 37 hereof is material and exculpatory evidence that was timely requested of Vogel and Kocourek by attorneys representing Steven A. Avery and was not provided to them. This was severely prejudicial, as the information would have prevented the prosecution, and/or the conviction, and/or the imprisonment of Steven A. Avery between 1985 and 2003.

39. All the acts and/or omissions set forth in ¶¶ 8-37, committed by Kocourek and Vogel were intentional and/or in reckless disregard of the rights of Steven A. Avery.

40. The differential treatment of Steven A. Avery and Allen as possible suspects in the attack on P. B. was without rational basis and was premised upon personal hostility toward Steven A. Avery.

41. The policies, customs and usages alleged in ¶¶ 24, 25, 29, 31, 34, 36 and 38 were those of Manitowoc County acting through its highest-ranking authoritative law enforcement decisionmakers, its Sheriff and District Attorney, and were causes of failures to exculpate Steven A. Avery, as alleged in ¶ 38 hereof.

42. After his conviction Steven A. Avery consistently maintained his innocence and sought by appeal and post-conviction remedies to set aside his convictions. His attorneys continued to seek and pursue exculpatory evidence. Notwithstanding their affirmative obligation to provide the information concerning Allen alleged in ¶¶ 8-13, 18, 22-23, 26-28, 30, 32, 35, and 37 hereof even after Steven A. Avery's conviction, Kocourek and Vogel continued to fail to provide such information to Steven A. Avery or his attorneys.

43. In March, 1986 Vogel prosecuted and convicted Allen for a sex offense which again brought to Vogel's attention all the exculpatory information concerning Allen that should have been provided to Steven A. Avery or his attorneys.

44. Due to the efforts of the Wisconsin Innocence Project and conclusive DNA evidence Steven A. Avery was exonerated and released by final court judgment in September, 2003. The same DNA evidence conclusively implicated Allen, who had committed further violent sex crimes between 1986 and 1995, in the assault, beating and attempted murder of P. B.

## First Cause of Action

45. The actions and omissions of the defendants Kocourek and/or Vogel and Manitowoc County in targeting Steven A. Avery and failing to investigate Allen as alleged in ¶¶ 8-43 hereof deprived Steven A. Avery of due process of law so

12

Case 1:04-cv-00986-LA   Filed 10/12/04   Page 12 of 15   Document 1

comprehensively as to "shock the conscience" in violation of the due process clause of the Fourteenth Amendment to the United States Constitution.

### Second Cause of Action

46. The actions and omissions of the defendants Kocourek and/or Vogel and Manitowoc County as alleged in ¶¶ 8-43 hereof in their differential treatment of Steven A. Avery and Allen as suspects in the P. B. assault case upon grounds of personal hostility and irrationality deprived Steven A. Avery of the equal protection of the laws as provided by the Fourteenth Amendment to the United States Constitution.

### Third Cause of Action

47. The actions and omissions of the defendants Kocourek and/or Vogel and Manitowoc County as alleged in ¶¶ 8-43 hereof in failing to record or provide to defense counsel for Steven A. Avery material exculpatory evidence concerning Allen that was timely and lawfully requested severely prejudiced Steven A. Avery and denied him due process of law in violation of the Fourteenth Amendment to the United States Constitution

### Fourth Cause of Action

48. The post-conviction continuing failure of the defendants Kocourek and/or Vogel and Manitowoc County to come forward with material exculpatory evidence known to them concerning Allen throughout the eighteen years of Steven A. Avery's imprisonment constitutes a violation of the due process and equal protection clauses of the Fourteenth Amendment to the United States Constitution and a continuing hindrance

and obstruction of the due course of justice in violation of the obstruction clause of 42 U.S.C. § 1985(2).

## Damages

49. As a result of the actions and omissions of Kocourek, Vogel and Manitowoc County as alleged in ¶¶ 8-43 hereof Steven A. Avery has suffered the loss of his liberty and dignity for eighteen years, has been treated by society as the worst kind of criminal for eighteen years, has suffered the destruction of the ordinary civilian opportunities to work and earn a living and all the economic and social benefits that accompany an earned living for more than eighteen years, has become permanently economically and socially disabled, has suffered the loss of personal autonomy and of his most intimate personal and familial relations, and has been deprived of all the countless experiences of life that accompany free citizenship in Wisconsin and the United States. These losses exceed $1,000,000.00 and may total as much as $18,000,000.00.

50. The actions and omissions of the defendants Kocourek and Vogel as alleged in ¶¶ 8-43 hereof are intentional and/or in reckless disregard of the rights of Steven A. Avery and so outrageous as to warrant the imposition of punitive damages upon each of them that exceed $1,000,000.00 and could total as much as $18,000,000.00 cumulatively.

WHEREFORE, plaintiff demands judgment against defendants Manitowoc County, Kocourek and Vogel for compensatory damages, jointly and severally, in an amount exceeding $1,000,000.00 and totaling as much as $18,000,000.00; for punitive damages against defendants Kocourek and Vogel individually in an amount exceeding $1,000,000.00 for each defendant and totaling cumulatively as much as $18,000,000.00; for indemnification to the benefit of Steven A. Avery over against Manitowoc County of

14

all damages assessed against defendants Kocourek and Vogel pursuant to § 895.46, Wis. Stats.; for all costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988; and for such other and further relief, equitable or legal, as this Court may deem proper and just.

PLAINTIFF HEREBY DEMANDS TRIAL BY JURY.

Dated at Milwaukee, Wisconsin, this 12th day of October, 2004.

GLYNN, FITZGERALD and
ALBEE, S.C.
526 East Wisconsin Avenue
Milwaukee, WI 53202
PHONE: (414) 221-9600

By: _____
Stephen M. Glynn
State Bar No. 1013103

WALTER F. KELLY, S.C.
158 North Broadway, Suite 600
Milwaukee, WI 53202
PHONE: (414) 271-6989

By: _____
Walter F. Kelly
State Bar No. 1012283

Attorneys for Plaintiff