# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**STEVEN A. AVERY,**

        **Plaintiff,**

    **v.**                                                                   **Case No. 04-C-986**

**MANITOWOC COUNTY,**
**THOMAS H. KOCOUREK,**
**and DENIS R. VOGEL,**

        **Defendants.**

---

## MEMORANDUM AND ORDER

Plaintiff Steven A. Avery brought an action under 42 U.S.C. § 1983 against defendants Manitowoc County and several former Manitowoc County officials alleging that they caused him to be wrongfully imprisoned for over eighteen years. I had jurisdiction pursuant to 28 U.S.C. § 1331. Before commencing the action, plaintiff authorized two different law firms to represent him. On October 30, 2003, he signed a 40 percent contingency fee agreement with Gingras, Cates and Luebke ("GCL"), and later the same day he engaged Attorney Walter F. Kelly ("Kelly") on a 33-1/3 percent contingency fee basis. Plaintiff understood that Attorney Stephen M. Glynn would assist Kelly. Shortly thereafter, plaintiff decided that he wanted Kelly and Glynn to represent him and discharged GCL. Thus, Kelly and Glynn pursued the § 1983 action on plaintiff's behalf. However, believing that plaintiff had breached his fee agreement with it, GCL advised Kelly and Glynn that it retained a lien on the proceeds of any settlement of plaintiff's claims. In February 2006, plaintiff settled his claims against defendants for $400,000. However, GCL, Kelly and Glynn could not resolve the fee dispute. Therefore, the parties, GCL, Kelly and Glynn asked me to enter an order dismissing plaintiff's § 1983 claims, retaining jurisdiction of the fee dispute pending my resolution of it, and directing Kelly to retain

40 percent of the settlement ($160,000) in his trust account. On February 6, 2006, I entered such an order. I now address the fee dispute.

However, I first discuss jurisdiction. Under 28 U.S.C. § 1367, I have supplemental jurisdiction over claims that are so related to a claim over which I have original jurisdiction that they are part of the same case or controversy. Generally speaking, supplemental jurisdiction encompasses what courts previously called ancillary and pendent jurisdiction. Ancillary jurisdiction referred to a federal court's authority to hear claims otherwise not within its jurisdiction if the claims arose out of the same set of facts as a case properly before it and were asserted after the filing of the original complaint. Pendent jurisdiction referred to a court's authority over claims otherwise not within its jurisdiction if the claims arose out of the same set of facts as a case properly before it and were asserted in the plaintiff's complaint. Erwin Chemerinsky, Federal Jurisdiction § 5.4 (4th ed. 2003). For several interrelated reasons, I conclude that the fee dispute in the present case falls within my ancillary jurisdiction.

First, in Baer v. First Options of Chicago, Inc., 72 F.3d 1294, 1301 (7th Cir. 1995), the Seventh Circuit recognized that courts have ancillary jurisdiction to decide fee disputes which arise between a lawyer and client. See also Fed. Sav. & Loan Ins. Corp. v. Ferrante, 364 F.3d 1037, 1041 (9th Cir. 2004) (stating that "ancillary jurisdiction exists over attorney fee disputes collateral to the underlying litigation"); Jenkins v. Weinshienk, 670 F.2d 915, 918 (10th Cir. 1982) (stating that "determining the legal fees a party to a lawsuit owes its attorney with respect to the work being done in the suit being litigated clearly fits the concept of ancillary jurisdiction"). Moreover, ancillary jurisdiction to resolve fee disputes continues after the initial litigation is no longer before the court. Chesley v. Union Carbide Corp., 927 F.2d 60, 65 (2nd Cir. 1991). Under Baer, I have ancillary jurisdiction in the present case. The fee

dispute involves plaintiff as well as GCL and Kelly because its resolution will affect his rights as a client, his potential contractual liability and possibly the percentage of the settlement that he receives.

Second, in Fulton National Bank v. Hozier, 267 U.S. 276, 280 (1925), the Supreme Court held that the exercise of ancillary jurisdiction is appropriate where the subsidiary controversy "has direct relation to property or assets actually or constructively drawn into the court's possession or control by the principal suit." See also Grimes v. Chrysler Motors Corp., 565 F.2d 841, 844 (2d Cir. 1977) (holding that a district court's disposition of a settlement fund as between disputing attorneys was ancillary to its approval of the settlement). In the present case, I have taken constructive possession of $160,000 for the purpose of allocating it between GCL, Kelly and plaintiff. Thus, I also have ancillary jurisdiction pursuant to Hozier.

Third, in Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 378-89 (1994), the Supreme Court emphasized that for purposes of determining whether a court has ancillary jurisdiction over a dispute, it is significant whether the court retained jurisdiction over it. See also Baer, 72 F.3d at 1301 n.7. In the present case, at the request of the parties, I expressly retained jurisdiction to resolve the fee dispute.

Thus, I have jurisdiction over the fee dispute under § 1367. I also conclude that I should exercise such jurisdiction. See § 1367(c) (stating that a court has discretion as to whether to exercise supplemental jurisdiction). Neither party asks me to decline to exercise supplemental jurisdiction, and doing so would serve no useful purpose.

Turning to the applicable law, as a general rule, if the federal government is not a party to litigation and the issue presented does not implicate federal law or a federal interest, a federal court should apply state law. Morgan v. S. Bend Cmty. Sch. Corp., 797 F.2d 471, 475-76 (7th Cir. 1986). This is so regardless of whether the court's jurisdiction is based on

diversity of citizenship or the presence of a federal question. Maternally Yours, Inc. v. Your Maternity Shop, Inc., 234 F.2d 538, 540-41 n.1 (2d Cir. 1956) (stating that in determining whether an issue is governed by state or federal law, a federal court looks to the source of the right asserted rather than to the basis for its jurisdiction). In the present case, although I had federal question jurisdiction over the § 1983 action, the source of the right asserted by GCL is state contract law. Moreover, neither the Constitution nor any federal statute addresses the fee issue nor does the issue implicate a federal interest. Therefore, I will apply state law. Both parties agree that Wisconsin law applies. In determining issues under Wisconsin law, I apply the law that the Wisconsin Supreme Court would apply. I must consider state court of appeals decisions, but I am not bound by them. Baer, 72 F.3d at 1301-02.

I begin the analysis with the Wisconsin Supreme Court Rules of Professional Conduct for Attorneys, which regulate the relationship between clients and lawyers. Under the rules, a client may discharge a lawyer at any time. See S.C.R. 20:1.16 and comment thereto (stating that "[a] client has a right to discharge a lawyer at any time, with or without cause, subject to liability for payment for the lawyer's services").[1] I will refer to this rule as the client discharge rule. The rule is based on the idea that the client-lawyer relationship is not commercial in nature but one whose essential features are trust and confidence, such that a client should not be forced to rely on a lawyer if he no longer wishes to do so. See Martin v. Camp, 114 N.E. 46, 48 (N.Y. 1916).

---

[1] In the present case, I assume that plaintiff had no cause for discharging GCL. Therefore, I need not address the elusive concept of what constitutes cause in the context of a client's discharge of a lawyer. See Lester Brickman, Setting the Fee When the Client Discharges a Contingent Fee Attorney, 41 Emory L.J. 367, 393-95 (1992).

Several propositions follow from the client discharge rule. First, a client may not be penalized for discharging a lawyer. Second, a client who has discharged a contingency fee lawyer may not be required to pay a fee until the case is positively resolved. This is so because the contingency fee is the poor man's key to the courthouse door. To make a client pay without a successful outcome would penalize the client for discharging the lawyer. Third, a client may not be required to pay a combined fee to a discharged and successor attorney that exceeds the fee to which the client agreed. A contrary rule would penalize the client for substituting attorneys and reflect poorly on the legal profession. Fourth, if a client discharges a lawyer in order to accept an offer or anticipated offer of settlement and freeze the lawyer out of a contingency fee, the lawyer should recover the fee. See generally Joseph M. Perillo, The Law of Lawyers' Contracts is Different, Fordham L. Rev. 443, 459 (1998).

The leading Wisconsin case on the subject is Tonn v. Reuter, 6 Wis. 2d 498, 505 (1959), which held that the proper measure of compensation for a lawyer who has been retained under a contingency fee agreement and discharged without cause is the amount of the contingent fee based on the amount of the settlement or judgment, less a fair allowance for the services and expenses that the lawyer would have necessarily expended performing the balance of the contract. Although Tonn is an old case, it may reasonably be read as expressing the propositions stated above. See William F. Hoefs, Attorney Client – Damages – Breach of Contingency Fee Contract, 1960 Wis. L. Rev. 156, 159 (pointing out that a careful analysis of Tonn indicates that the court intended to protect the unique relationship of client and lawyer and to create a rule that did not penalize a client for discharging a lawyer).

Insofar as it relates to the allocation of fees between discharged and successor contingency fee lawyers, Tonn determined that the attorney initially retained and then discharged without cause, rather than the attorney subsequently retained, should benefit from

-5-
Case 1:04-cv-00986-LA   Filed 04/28/06   Page 5 of 7   Document 70

any "windfall" resulting from the contingency fee contract. Action Law, S.C. v. Habush, Habush, Davis & Rottier, S.C., No. 96-2305 1997 Wis. App. LEXIS 178, at *14 (Wis. Ct. App. Feb. 20, 1997). By the same token, under the Tonn formula, if the subsequently retained attorney is required to perform a great deal of work in order to prevail, the deduction for services and expenses necessary to perform the balance of the contract may be substantial. Under such circumstances, it is possible that the initially-retained lawyer will wind up with nothing. Hoefs, supra, at 159 (stating that under Tonn, there are several situations where a discharged attorney may receive little or no compensation).

In the present case, there is no windfall. The evidence indicates that Kelly and Glynn spent 1,050 hours on plaintiff's case, that their hourly billing rates were $300 and $350 respectively, and that both the hours they expended and their billing rates were reasonable. In addition, they incurred over $28,000 in out-of-pocket expenses. The case involved difficult and complicated factual and legal issues and a great deal of work. Kelly and Glynn obtained and analyzed over 10,000 pages of records and deposed over 30 adverse witnesses. The case became more complicated because of the involvement of a number of governmental entities. Finally, while the case was pending, law enforcement officials charged plaintiff with first degree intentional homicide, which undoubtedly dramatically reduced the value of the case.

Under Tonn, GCL is entitled to a 40% contingency fee on the settlement of $400,000 ($160,000) less a fair allowance for the services and expenses which it necessarily would have expended in performing the balance of the contract. The best measure of the services and expenses which GCL necessarily would have expended in performing the balance of the contract is the amount that Kelly and Glynn actually expended. This is so because Kelly and Glynn expended a reasonable number of hours and charged reasonable rates. Kelly and

Glynn expended $328,000 in services and $28,000 in costs. Thus, a fair allowance for the services and expenses that GCL necessarily would have expended exceeds the $160,000 that its 40% contingency fee would have produced. Thus, GCL is not entitled to a fee. This result is not inequitable because, as previously indicated, plaintiff discharged GCL before it commenced work on the case. Kelly and Glynn are entitled to whatever they agreed to with plaintiff. If their entitlement is less than $160,000 (which seems not to be the case), plaintiff is entitled to the balance.

Because of the conclusion stated above, I need not address Kelly and Glynn's argument that GCL's fee agreement with plaintiff was deficient.

For the reasons stated,

**IT IS ORDERED** that GCL's application for fees is **DENIED**.

Dated at Milwaukee, Wisconsin, this 28th day of April, 2006.

                                      s/Lynn Adelman
                                      LYNN ADELMAN
                                      U.S. District Judge